480 A.2d 1096

**Frederick REED and Roxanne M. Reed, Appellants**

**v.**

**Ruth Ann HUTCHINSON.**

Superior Court of Pennsylvania.

Argued Feb. 21, 1984.

Filed July 6, 1984.

Reargument Denied Sept. 11, 1984.

Edward Blumstein, Philadelphia, for appellants.

C. Richard Morton, West Chester, for appellee.

Before WICKERSHAM, MONTGOMERY and MONTEMURO.

MONTEMURO, Judge:

Appellants, Frederick Reed and his wife, Roxanne Reed, commenced this action in trespass to recover for injuries sustained in an accident which occurred on September 16, 1976, when a pick-up truck driven by appellee Hutchinson left the road and hit a guardrail. Appellant, Roxanne Reed,

was a passenger in the truck at the time of the accident. At the completion of trial on November 17, 1980. The jury rendered its verdict in favor of defendant-appellee Hutchinson. Appellants' motions for a new trial and for judgment n.o.v. were denied by the court below. Judgment was entered on July 23, 1982 and this appeal followed.

At approximately 2:20 PM, on the afternoon of September 16, 1976, appellee was driving down Paoli Pike toward West Chester, when, near the Pike's intersection with Route 352, her pick-up truck veered off the road and hit a guardrail. After the accident, the right front wheel of appellee's vehicle was discovered on the right side of the road some twenty-five feet to the rear of the vehicle. At trial, plaintiff-appellants attempted to prove that appellee driver lost control of her vehicle due to inattentiveness and drove off the road into a guardrail, which thus caused the vehicle to lose its right front wheel. Appellee's position was that the vehicle lost its right front wheel for unexplained reasons, which loss then caused the vehicle to leave the road and hit the guardrail.

On appeal, appellants raise four issues, three of which relate to the testimony of the investigating officer, Trooper Williams, and can essentially be stated as one question—did the trial court err in permitting opinion testimony by Trooper Williams?

Trooper Williams was not an eyewitness to the accident, but instead arrived on the scene two to three minutes later. At trial, Trooper Williams was called as a witness on behalf of appellants. It was established, *inter alia*, on direct examination that the officer had observed cut marks on the road at the scene of the accident. The following exchange then occurred on cross-examination:

Q. Let me ask you this, sir. Did the cut marks that you saw appear to have been made by what was left after the wheel came off?

MR. BLUMSTEIN: Objection, Your Honor.

THE COURT: State your grounds.

MR. BLUMSTEIN: If the Officer doesn't know how the wheel came off, and if the Officer didn't see the cut marks made, I don't know how he can state what made the cut marks.

THE COURT: What is the basis of your objection, the precise basis of your objection?

MR. BLUMSTEIN: The basis of my objection is there's been no foundation laid for the officer to make this statement. He's calling for an opinion of the officer for facts not observed.

THE COURT: Is the basis that there's been no foundation laid?

MR. BLUMSTEIN: That's number 1. Number 2, he's calling for the opinion of the officer.

THE COURT: And, sir, as to the foundation which you deem deficient, do you deem it factually deficient or deficient as to this gentleman's experience in expertise?

MR. BLUMSTEIN: Both, Your Honor.

THE COURT: And with respect to the opinion, the alleged impropriety to his testifying to an opinion, do you have any particular basis of that, sir, that you object to? Do you object to the police officers giving opinions as to the cause of an accident in general, or what exactly? What is the precise basis of your objection, sir?

MR. BLUMSTEIN: May we have a sidebar, Your Honor? I would be glad to discuss it in some detail.

(Argument reported but not requested to be transcribed.)

THE COURT: Do you wish to cross examine him on his own expertise, sir?

MR. BLUMSTEIN: If Your Honor would permit me?

THE COURT: Very well. I will allow you to do that before giving an ultimate ruling as to the question.

## VOIR DIRE EXAMINATION

BY MR. BLUMSTEIN:

Q. Officer, prior to this particular incident, you had been a state police officer for how long?

A. Approximately a year and a half then.

Q. About a year and a half?

A. Yes, sir.

Q. And what training have you had in accident investigation?

A. The basic training that they give at the State Police Academy, sir. Immediately following that—

Q. What was that basic training?

A. Approximately a twenty-two, twenty-four hour course of accident investigation and accident analysis.

Q. Twenty-four hour course?

A. Approximately, yes, sir.

Q. Officer, did you study in that course anything that related to the consistency of highways or the materials of highways?

A. We're given a working knowledge of the type of roadways that are laid; we're taught about driver reaction to accidents or to, you know circumstances. That's basically about it.

Q. Were you taught anything about the mechanics of the operation of an automobile?

A. No, sir. I've no expertise in that field.

MR. BLUMSTEIN: I have no other question your honor.

(N.T. November 13, 1980, pp. 87–90).

Cross-examination was then permitted to continue, and eventually appellee's attorney posited the following:

Q. All right. Did you arrive at a conclusion sir, based upon what you saw there at the scene and talking to the people involved, and based on your background and training and experience, as to whether that wheel came off before or after the vehicle came into contact with the guardrail?

MR. BLUMSTEIN: Objection, Your Honor.

THE COURT: Overruled. Did you arrive at a conclusion, sir? Yes or no.

A. Yes, sir; I did.

Q. What was your conclusion?

MR. BLUMSTEIN: Objection. Your Honor.

THE COURT: State Your grounds.

MR. BLUMSTEIN: Your Honor, I think that the officer is being asked to testify to facts that are not within his province. He's being asked to give an opinion that he cannot give. He did not witness the accident; he made certain observations. It has been testified that he had certain training for twenty-four hours, Your Honor, and he had been on the force for a year and a half. I think that the issue of whether or not that wheel left the vehicle before or after the vehicle left the road is not within his province. He's not qualified to give the answer. Further, Your Honor, I cite the cases that I cited previously, including the Rosato vs. Nationwide.

THE COURT: Objection overruled.

BY MR. MORTON:

Q. Would you state your opinion, sir.

A. Yes, sir. It was my opinion, after observing the scene and observing the vehicles, that the accident was a result of the front wheel, the front right wheel, of the vehicle becoming dislodged or dislocated for some unknown reason from the vehicle itself causing the operator to loose control and veer to the right and striking the guardrail, and coming to rest at the same.

(N.T. November 13, 1980, at 97–98).

■ We begin our analysis by stating the general rule that in this Commonwealth an investigating police officer who did not actually witness a motor vehicle accident is not competent to render an opinion at trial as to its cause. *Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296, 203 A.2d 657 (1964); *Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963); *Johnson v. Peoples Cab Co.*, 386 Pa. 513, 126 A.2d 720 (1956); *Lesher v. Henning*, 302 Pa. Super. 508, 449

A.2d 32 (1982); *Kelly v. Buckley*, 280 Pa. Super. 353, 421 A.2d 759 (1980); *Andrews v. Jackson*, 211 Pa. Super. 166, 235 A.2d 452 (1967). The rationale advanced for the rule is that since the officer has no first hand knowledge of the accident, his conclusion as to its cause is speculative at best, and thus constitutes an unwarranted and prejudicial usurpation of the fact finding prerogative of the jury. *Brodie v. Philadelphia Transportation Co., supra; Smith v. Clark, supra, Lesher v. Henning, supra.*

■ However, there is a caveat to this general rule. When a police officer is properly qualified as an expert witness, and a proper foundation for his testimony is established, an officer may, like any other witness, render an opinion on the question of causation. *Lesher v. Henning, supra* 302 Pa. Super. at 512–513 n. 2, 449 A.2d at 43 n. 2.

■ "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he or she is qualified as an expert." *Kravinsky v. Glover*, 263 Pa. Super. 8, 396 A.2d 1349 (1979). Additionally, we acknowledge that the question of qualifications of an expert witness is one for the discretion of the trial court. *Commonwealth v. Williams*, 270 Pa. Super. 27, 410 A.2d 880 (1979).

Looking once again at the *voir dire* examination of the trooper, what we have is an individual who had been a state police officer for 1½ years at the time of the accident, who had undergone the basic training in accident investigation which is given at the State Police Academy. When questioned as to what was covered in the course, the trooper replied:

A. We're given a working knowledge of the type of roadways that are laid; we're taught about driver reaction to accidents or to, you know, circumstances. *That's basically about it.*

Q. Were you taught anything about the consistency of highways or what kind of objects would be required to make any kinds of marks on highways?

A. *Not that I can recall,* sir.

Q. Were you taught anything about the mechanics of the operation of an automobile?

A. No, sir. *I've no expertise in that field.*

(N.T. November 13, 1980 at 90) (Emphasis added).

■ We fail to see how this constitutes a pretension of specialized knowledge. To the contrary, the trooper highlighted his lack of expertise regarding the specific question at issue. If what we have here were sufficient to qualify an officer as an expert, as appellee asserts, one would expect to find numerous instances of opinion testimony by police officers in the case law. This is distinctly not so. While officers are permitted with some frequency to testify as to their opinion of the speed of a vehicle, based on their interpretation of skid marks found at the scene of an accident, *e.g., Rutovitsky v. Magliocco,* 394 Pa. 387, 147 A.2d 153 (1959); *Morris v. Moss,* 290 Pa. Super. 587, 435 A.2d 184 (1981); *Rosato v. Nationwide Insurance Co.,* 263 Pa. Super. 340, 397 A.2d 1238 (1979), appellee cites us to no other circumstance in which opinion testimony of a police officer has been admitted into evidence. Our own research has confirmed that this is a representative picture of the case law as a whole on the subject of opinion testimony of non-eyewitness police officers.

Moreover, we note that appellants' position is substantially bolstered, and appellee's consequently undercut, by certain language in appellee's brief. Therein, appellee states, "We would also suggest that the opinion asked of the officer in this case as to when the wheel left the vehicle, could have easily been arrived at by the average teenage." (Brief of appellee, p. 12). If this is so, then the subject is not a proper one for expert testimony, and the issue is not one where opinion evidence, expert or otherwise, is admissible. 9 Standard Pa. Practice 2d §§ 55:1, 55:4. To admit the opinion of an expert in such circumstance is a patent usurpation of the jury's function.

■ Having determined that admission of the trooper's opinion testimony was error, we now must turn to the question of whether a new trial should be granted. While we recognize that every erroneous admission of evidence does not lead to a new trial, *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983), we feel that a new trial should be granted here. We base this conclusion on the factually similar case of *Lesher v. Henning, supra.* Therein it was determined that opinion testimony of the investigating officer had been improperly admitted. The court rejected the proposition that the officer's opinion did not influence the jury's determination of liability. It specifically noted that the officer was the first witness to testify on behalf of appellee and thus the first to contradict the plaintiffs' story. Additionally, the court stated that:

> Indeed, the fact that the opinion was expressed by a police officer might, in itself, have rendered its admission into evidence prejudicial. As Justice Musmanno held in a remarkably similar case: "It was ... highly prejudicial ... that this statement should be brought to the attention of the jury *with all the prestige and authoritativeness which naturally attaches to an impartial police report.*" *Johnson v. Peoples Cab Co.*, 386 Pa. 513, 516, 126 A.2d 720, 721 (1956).

*Lesher v. Henning, supra* 302 Pa.Super. at 514, 449 A.2d at 35.

■ Similar considerations apply in the case *sub judice*, where the trooper testified during plaintiff-appellants' presentation of their case.

Appellants raise a fourth issue regarding an allegedly prejudicial statement by a juror. In view of our determination that a new trial is required, we need not address this issue.

Judgment is vacated, and the case remanded to the Court of Common Pleas for a new trial. We do not retain jurisdiction.