546 A.2d 1226

James KEARNS, a minor by his parents and natural guardians James KEARNS and Mary Alice Kearns, and James Kearns and Mary Alice Kearns, Individually

v.

Paul J. DeHAAS, Joan Marie Timko, City of Scranton and Scranton School District.

**Appeal of Paul J. DeHAAS.**

Superior Court of Pennsylvania.

Argued April 6, 1988.

Filed Aug. 24, 1988.

John J. Byrne, Scranton, for appellant.

John B. Beemer, Clarks Summit, for Kearns, appellees.

Before WIEAND, McEWEN and BECK, JJ.

WIEAND, Judge:

On March 1, 1983, at or about 8:00 a.m., thirteen year old James Kearns, Jr. was struck by a car and severely injured while crossing Moosic Street in the City of Scranton while on his way to school. The car that struck Kearns was operated by Paul DeHaas.[1] DeHaas had been traveling in an easterly direction on Moosic Street when Kearns ran directly into his path. In order to recover for the injuries which Kearns had sustained, his parents, James and Mary Alice Kearns, brought an action against DeHaas [2] on behalf

1. The vehicle was owned by DeHaas's girlfriend, Joan Marie Timko.

2. Also named as defendants in this action were Joan Marie Timko, the City of Scranton and the Scranton School District. Prior to trial,

of their son and individually in their own right. The trial of this action was held before a jury which found that the causal negligence of defendant DeHaas was fifty-seven percent and that the causal negligence of the minor plaintiff was forty-three percent. Damages were assessed by the jury in the amount of $1.5 million; and, thereafter, the trial court molded the jury's findings into a verdict for the plaintiffs in the amount of $855,000.00. DeHaas filed post-trial motions for judgment n.o.v. and/or new trial, and the Kearnses petitioned for the assessment of delay damages. The trial court denied DeHaas's post-trial motions and awarded the Kearnses delay damages in the amount of $153,197.25. On appeal DeHaas raises numerous allegations of error on the part of the trial court. We will consider his contentions seriatim.

Following the accident in which the minor plaintiff was injured, criminal charges were brought against appellant, but these charges were dismissed following a preliminary hearing. Appellant asserts that these criminal charges were unwarranted, motivated by a desire to gain an advantage in the civil action, and supported by fabricated evidence.[3] At the trial of this civil action, appellant offered to cross-examine several of plaintiffs' witnesses regarding the criminal charges in order to demonstrate bias. The trial court sustained objections to such questions and disallowed all questions regarding the criminal prosecution. Appellant contends that this ruling was erroneous. He argues that he should have been allowed to cross-examine plaintiffs' witnesses about the criminal proceedings in order to show bias, prejudice and interest. We disagree.

■ It is true that, as a general rule, evidence of interest or bias on the part of a witness is admissible and a proper

however, these parties were dismissed from the action by stipulation of counsel.

3. In connection with this argument appellant points out that the father of the minor plaintiff is a Pennsylvania State Policeman and that the same attorney representing the plaintiffs in this civil action also represented the Commonwealth at appellant's preliminary hearing under the designation of special prosecutor.

subject for cross-examination. *Panczak v. Commonwealth, Unemployment Compensation Bd.,* 48 Pa. Commw. 279, 283, 409 A.2d 929, 931 (1980). See also: *Downey v. Weston,* 451 Pa. 259, 301 A.2d 635 (1973). However, "[i]t is well established that the scope and limits of cross-examination are within the trial court's discretion and the court's rulings thereon will not be reversed in the absence of a clear abuse of discretion or an error of law." *Kemp v. Qualls,* 326 Pa.Super. 319, 324, 473 A.2d 1369, 1371 (1984). See also: *Brennan v. St. Luke's Hospital,* 446 Pa. 339, 285 A.2d 471 (1971); *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 420 A.2d 514 (1980). Moreover, it is within the trial court's sound discretion to limit cross-examination which touches on collateral matters. *Chiorazzi v. Commonwealth, Dept. of Highways,* 411 Pa. 397, 400, 192 A.2d 400, 401 (1963). See also: *McGoldrick v. Pennsylvania R.R. Co.,* 430 Pa. 597, 241 A.2d 90 (1968); *Berkley v. Jeannette,* 373 Pa. 376, 96 A.2d 118 (1953); *Walley v. Iraca,* 360 Pa.Super. 436, 520 A.2d 886 (1987). In the instant case, the trial court did not abuse its discretion by precluding appellant from delving into, on cross-examination, the collateral matter of the criminal charges which had been brought against appellant and dismissed. Cf. *Eastern Express, Inc. v. Food Haulers, Inc.,* 445 Pa. 432, 285 A.2d 152 (1971) (in action arising from automobile collision, it was reversible error to admit testimony of police officer on cross-examination as to fact that he had arrested one of the parties for reckless driving); *Gatling v. Rothman,* 267 Pa.Super. 566, 407 A.2d 387 (1979) (in action arising from automobile collision, trial court abused its discretion in admitting testimony of investigating police officer on cross-examiniation as to fact that defendant had not received a motor vehicle citation).

At trial, plaintiffs called Scranton Police Officer William Donovan to testify regarding the observations which he had made upon inspecting the car which had struck the minor plaintiff. Specifically, Donovan's testimony focused on the condition of the brakes of the car immedi-

ately following the accident. As part of his testimony, Donovan said that he had found no resistance when applying pressure to the brake pedal and had found no brake fluid in the master cylinder. Prior to giving this testimony, Donovan explained his familiarity with and experience in inspecting automobile brakes. The trial court ruled that the officer was competent to testify to these observations. As a further part of his testimony, Donovan described the presence of fluid on the floor mat of the car in question, and he opined that this fluid was brake fluid. Appellant objected on the grounds that, since no tests had been performed by Donovan to confirm the nature of the fluid, he was incompetent to render such an opinion. The trial court overruled appellant's objection after inquiring of Donovan as to whether he had had any prior experience with brake fluid. The officer responded that he had had a similar experience with a vehicle which he had owned. Apparently satisfied that the officer was competent to render his opinion as to what the fluid in question was, the trial court allowed Donovan to continue. Appellant argues that the officer was not qualified to render an opinion as to the nature of the fluid found on the floor of the car and contends that the trial court abused its discretion by allowing such testimony. We disagree.

The general rule in this Commonwealth is that an investigating police officer, who was not actually a witness to an accident, is not competent to render an opinion as to the cause of that accident. *Reed v. Hutchinson*, 331 Pa.Super. 404, 409, 480 A.2d 1096, 1099 (1984). See also: *Brodie v. Philadelphia Transportation Co.*, 415 Pa. 296, 203 A.2d 657 (1964); *Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963); *Lesher v. Henning*, 302 Pa.Super. 508, 449 A.2d 32 (1982). This rule is based on the fact that the officer has no firsthand knowledge of the accident, and, thus, his conclusions would be speculative at best. *Reed v. Hutchinson, supra*, 331 Pa.Superior Ct. at 410, 480 A.2d at 1099. Strictly speaking, however, Donovan was not offered as an expert and did not give expert opinion testimony. He testified as a fact witness, and the only issue for the trial

court was whether he was sufficiently familiar with the nature of brake fluid to be able to recognize and identify it. The trial court did not err when it allowed Donovan to identify as brake fluid the substance found on the floor mat of the vehicle driven by appellant.

■ Appellant also contends that the trial court erroneously permitted Donovan to express an opinion regarding the cause of the accident. Specifically, appellant alleges that the officer was permitted to state an opinion that appellant may have seen the minor plaintiff but was unable to stop because he had no brakes. We agree with appellant that Donovan was not competent to give such testimony. He was not a witness to the accident and did not have knowledge of facts necessary to render such an opinion. However, our review of the record reveals that the trial court sustained appellant's objection to such testimony. This, as we have observed, was a correct ruling. Appellant requested no further relief. Therefore, there is no basis for this complaint.

■ Appellant next challenges the testimony of Mary Alice Kearns, the mother of James Kearns, Jr., on grounds that she improperly relied upon hearsay statements made by various persons when she described her son's condition. We disagree. After carefully reviewing the testimony of Mrs. Kearns, we conclude, as did the trial court, that her testimony regarding her son's physical condition was based on her own observations. The references to which appellant objects as being hearsay were insignificant. We find nothing in the testimony of Mrs. Kearns which would entitle appellant to a new trial.

■ In cross-examining Mrs. Kearns, defense counsel used a medical report to assist him in phrasing questions. Following an objection, the trial court ruled that defense counsel could not use medical reports, which were not in evidence, in framing his questions. The court explained its ruling by stating: "You can't ask a witness something on cross-examination in a positive way and then not produce

your own testimony so that the jury can test the credibility of it." Keeping in mind the wide discretion over the scope of cross-examination which the trial court possesses, we find no abuse of that discretion with respect to the cross-examination of Mrs. Kearns.

In *Commonwealth v. Lobel,* 294 Pa.Super. 550, 440 A.2d 602 (1982) this Court said "[w]hen the obvious purpose of cross-examination is to develop defendant's own case, a ruling by the trial judge to limit cross-examination is not an abuse of discretion." *Id.,* 294 Pa.Superior Ct. at 556, 440 A.2d at 605. See also: *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A.2d 382 (1970); *Okotkewicz v. Pittsburgh Railways Co.,* 397 Pa. 303, 155 A.2d 192 (1959); *Kline v. Kachmar,* 360 Pa. 396, 61 A.2d 825 (1948); *Greenfield v. City of Philadelphia,* 282 Pa. 344, 127 A. 768 (1925). Furthermore, when a trial court so limits cross-examination, its ruling should only be reversed when it precludes the cross-examiner from affirmatively producing such evidence during his own case-in-chief. See: Packel & Poulin, Pennsylvania Evidence, Ch. VI, § 611.2, at 464 (1987). See also: *Commonwealth v. Lobel, supra.* In the instant case, the trial court did not preclude appellant from cross-examining Mrs. Kearns concerning her son's physical condition. Rather, the court prevented appellant only from covertly introducing medical records into evidence under the guise of cross-examination. Moreover, the trial court's ruling did not prevent appellant from producing affirmative evidence to show the minor plaintiff's medical condition during his own case-in-chief. Indeed, it was defense counsel's concession that no such evidence would be forthcoming, made in response to the court's inquiry, which prompted the trial court to limit the cross-examination of Mrs. Kearns. Apparently it was appellant's choice not to produce medical evidence during his case-in-chief. We find no abuse of discretion in the trial court's decision to preclude appellant from indirectly producing such evidence during cross-examination.

■ Plaintiffs called Timothy Bruffey as a vocational expert at trial. Bruffey stated that he had relied on various medical, psychological and psychiatric reports in forming his opinion about the minor plaintiff's future employment prospects. Appellant contends that Bruffey's testimony was improper because an expert witness may not base his opinion on hearsay documents which have not been admitted into evidence. In *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), however, a limited exception was created to the general rule that an expert's opinion must be based on facts in the record. See: Packel & Poulin, Pennsylvania Evidence, Ch. VII, § 703 (1987). This exception has been explained by this Court as follows:

> Following the guidance of the federal rules of evidence, our courts have liberalized the permissible bases for an expert's opinion testimony. Federal Rule of Evidence 703 permits an expert to base his opinion on facts or data not admissible in evidence if those facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject ..." F.R.E. 703.

> In *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), our Supreme Court applied the theory of Rule 703 in allowing medical witnesses to express an opinion on medical matters based in part on reports of others although the reports themselves were not in evidence if the reports were of the type the expert would rely upon in the practice of his profession. *Id.*, 444 Pa. at 445, 282 A.2d at 698. Subsequent opinions of the Supreme Court and this Court reveal that the applicability of *Thomas* is not limited to the medical profession. See *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978); *Maravich v. Aetna Life and Casualty Co.*, 350 Pa.Super. 392, 504 A.2d 896, 900–1 (1986) (in action on fire policy where arson is alleged, fire marshall giving expert testimony may rely on information supplied to him by firemen under his supervision); *Steinhauer v. Wilson*, 336 Pa.Super. 155, 158, 485 A.2d 477, 479 (1984) (construction

expert may base cost estimates on figures provided by various contractors with whom he consulted).

*Bolus v. United Penn Bank,* 363 Pa.Super. 247, 271, 525 A.2d 1215, 1227 (1987). Having reviewed Bruffey's testimony, we are persuaded that the reports on which he relied were of a type upon which a vocational expert would normally rely. Therefore, we agree with the trial court that Bruffey's testimony was proper.

Timothy Bruffey was re-called by plaintiffs on the last day of trial to testify as an actuarial economist after the expert whom they had intended to use became ill. Appellant argues that the trial court should have excluded this testimony because defense counsel had not been supplied with a copy of Bruffey's expert report before the day on which Bruffey testified. Appellant argues that because of this he was denied the opportunity for meaningful cross-examination.

■ "While the late disclosure of the identity or qualifications of an expert is to be condemned, the mere occurrence of such a circumstance does not *per se* create grounds for a new trial." *Kemp v. Qualls,* 326 Pa.Super. 319, 330, 473 A.2d 1369, 1374 (1984) (emphasis in original). The preclusion of expert testimony is a drastic sanction which should not be applied unless the facts of a case make it absolutely necessary to do so. *Id.* See also: *Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 381, 399 A.2d 1095, 1102 (1979). " '[A]ssuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as a result of a dilatory disclosure.' " *Kemp v. Qualls, supra,* quoting *Royster v. McGowen Ford, Inc.,* 294 Pa.Super. 160, 169, 439 A.2d 799, 804 (1982).

■ In the instant case, there was neither bad faith nor misrepresentation on the part of the plaintiffs. Their change in experts was made necessary by illness. Moreover, the record does not disclose that appellant was preju-

diced. Although appellant would have been entitled to additional time to prepare to cross-examine the plaintiffs' substituted expert witness, the record discloses that no such request was made. Appellant's objection offered only the suggestion that a continuance be granted so that plaintiffs' original expert could be deposed. Under these circumstances, we find no abuse of discretion in the trial court's decision to allow Timothy Bruffey to testify for the plaintiffs as an actuary on the last day of trial.

More troubling is the testimony given by plaintiffs' witness, George Gallacher. At trial, Gallacher, a photographer and investigator, was called to identify photographs which he had taken and a diagram which he had made of the accident scene. On cross-examination, Gallacher was asked to calculate how many feet per second a car would travel at the speed of 25 miles per hour. His answer was 36.66 feet per second. Defense counsel then asked Gallacher to draw a car on his diagram to represent the car which appellant had been driving at the time of the accident. An objection was lodged by plaintiffs' counsel on the grounds that Gallacher was not an accident reconstruction expert. The trial court sustained the objection, stating: "Mr. Gallacher was called as a witness to identify the diagram and the photos he took, and not to be an expert on the recreation of the accident." On redirect examination, however, Gallacher was permitted, over objection, to testify by referring to a Northwestern University study of average stopping distances of a standard passenger car. Information from this study was combined with the calculation which Gallacher had made on cross-examination. In response to direct questions by plaintiffs' counsel, Gallacher was permitted to testify that a standard passenger car moving at a constant speed of 25 miles per hour would travel 73 feet over a two second period. He testified further that if the driver of such a car would perceive an object in his path 73 feet away, his average stopping distance, according to the Northwestern University study, would be approximately 59 feet. This information was illustrated by Gallacher by use of the diagram which he had prepared. The trial court

permitted this testimony despite Gallacher's admission that he had no knowledge concerning any of the variables which would have been required to render an opinion concerning the actual stopping distance of the car which appellant had been driving. Moreover, he lacked any expertise or knowledge about the study which would have permitted him to testify that the study was reliable. In its post-trial opinion, the trial court explained its reasons for allowing Gallacher to testify in this manner as follows:

We find that the witness' testimony on redirect examination as to standard stopping distances was proper. Mr. Gallacher testified to a study prepared by Northwestern University [N.T. 99], stating standard figures for the stopping distances of an average car. Defendant argues that an expert is not allowed to state an opinion that is not based on the actual facts of the case. Despite defendant's authority for this position, the fact is that Mr. Gallacher did not render an *opinion* as to the stopping distance in this case. Mr. Gallacher merely testified from a study based on standard test results and admitted not knowing any of the extensive information necessary to render an opinion on the stopping distance of the DeHaas car. Indeed, defense counsel cross-examined the witness at great length on this lack of information. [N.T. 106–117]. Therefore, since Mr. Gallacher did not render an opinion as an expert on this issue, but merely testified as to the results of a study accepted in the industry, no error resulted.

We agree with appellant that the trial court abused its discretion and committed an error of law when it allowed Gallacher to testify concerning the Northwestern University study on average stopping distances of a standard passenger car.

■■■ In the first place, it was improper re-direct examination. The witness had not been called as an expert but merely to establish the accuracy of photographs and a diagram. The trial court had properly disallowed cross-examination of the witness about speeds and distances. It is

difficult to comprehend, therefore, why plaintiffs were permitted to inquire on re-direct examination regarding speeds and stopping distances. The witness was not an expert, admitted that he was not an expert, and should not have been permitted to testify as such.

 It is true that a duly qualified expert witness may rely upon accepted published authorities on the subject of his expertise. See: *McDonough v. U.S. Steel Corp.*, 228 Pa.Super. 268, 272 n. 1, 324 A.2d 542, 544 n. 1 (1974). However, such authorities may not be received in evidence to prove the truth of the matters contained therein. See: *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 619, 537 A.2d 334, 339 (1988). The law does not permit a witness who has not been qualified as an expert and who has no knowledge of the facts of a case to read standard test results to the jury.

 Moreover, standard tests are not admissible merely for general informational purposes. This Court has held that expert testimony on the dynamics of intra-family sexual abuse is not admissible merely because it has general informational value. Rather, such testimony must be relevant to facts at issue in the case being tried. *Commonwealth v. McNeely*, 368 Pa.Super. 517, 534 A.2d 778 (1987). The Court in *McNeely* reasoned as follows:

> Expert testimony is relevant if it tends to make a fact at issue more or less probable and does not confuse, mislead, or prejudice the jury. [*Commonwealth v. Gallagher, supra,* [353 Pa.Super. 426] at 510 A.2d [735 at] 739 [1986]. Relevance is comprised of two fundamental components: materiality and probative value. "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." Probative value, on the other hand, deals with the tendancy [sic] of the evidence to establish the proposition that it is offered to prove. McCormick, Evidence, § 185, at 541 (Cleary 3rd ed. 1984).

. . . .

It is beyond cavil to suggest that testimony of this nature is automatically relevant, and therefore admissible, in every child sexual abuse case. Rather, we emphasize that expert testimony discussing the general dynamics of child sexual abuse must be offered to further its proponent's position on a specific issue at trial. The admission of such testimony in a vacuum, without relation to a particular factual dispute, is inappropriate.

*Commonwealth v. McNeely, supra,* 368 Pa.Superior Ct. at 520–524, 534 A.2d at 779–781. Similarly in the instant case, there could be no other purpose for the information shown in the Northwestern University study, which George Gallacher recited to the jury, than for its general informational value. The witness, Gallacher, admitted that he had no specific knowledge of the facts involved in this case or of the condition of the car appellant was driving at the time of the accident. Therefore, the evidence was irrelevant. It was not and could not be applied to the facts of the instant case by this witness.

■ This testimony was also prejudicial to appellant. The clear and desired inference created by Gallacher's calculations on redirect examination was that appellant should have been able to bring the vehicle which he was driving to a stop before hitting the minor plaintiff. The trial court should not have allowed such testimony from this witness. Not only was it clear that Gallacher was not an expert on accident reconstruction, but more importantly he had no knowledge of when, or even if, appellant had perceived the minor plaintiff prior to the accident. Gallacher's testimony as to stopping distance, therefore, had no relevancy to any factual issues in this litigation. The allowance of his testimony was a clear abuse of the trial court's discretion and requires that appellant be granted a new trial.

■ The trial court also abused its discretion by permitting Patricia Morgan, another of plaintiffs' trial witnesses, to state over repeated objections, her opinion that appellant was exceeding the 25 mile per hour speed limit just prior to

hitting the minor plaintiff. Miss Morgan's testimony as to the speed of appellant's vehicle proceeded as follows:

Q. Now you learned today that the speed limit on Moosic Street is 25 miles an hour?

A. Yes.

Q. Did you observe the vehicle traveling in an easterly direction on Moosic Street long enough to give us your opinion as to whether it was exceeding 25 miles per hour?

A. Yes, I can give you my opinion.

. . . . .

Q. Can you give us your best estimate as to the speed?

A. I can't cite specific miles per hour, no.

Q. So you are saying just to make sure I understand what you are saying. You do have an opinion as to whether the car was exceeding 25 miles an hour?

A. Yes.

Q. What is that opinion?

A. My opinion is that the car was traveling faster than I was and that I knew that I was doing the speed limit.

. . . . .

THE COURT: How fast were you going, Miss Morgan?

THE WITNESS: I know that I would have been doing the speed limit just because I always do, but as I found out today that the speed limit was 25 miles per hour, so I'm using that as a point of reference.

THE COURT: And what is your opinion referring to you own speed as to the speed of the car coming up the hill?

THE WITNESS: My opinion was that the car was traveling fast and I know fast is a—

BY MR. BEEMER:

Q. Was it traveling faster than 25 miles an hour?

A. I think so, yes.

THE COURT: As compared to your speed, Miss Morgan, what we're talking about, was it slower than your speed or exceeding your speed?

THE WITNESS: It was exceeding mine.

This testimony constituted improper opinion evidence and should not have been allowed.

The Supreme Court has held that "while lay witnesses are permitted to express estimates of vehicle speed in numerical terms, terms such as 'fast,' 'slow' or 'excessive' and the like have been found to be conclusory in nature as well as lacking in evidentiary value." *Starner v. Wirth*, 440 Pa. 177, 181, 269 A.2d 674, 676 (1970) (footnotes omitted). See also: *Catina v. Maree*, 498 Pa. 443, 447 A.2d 228 (1982); *Rosato v. Nationwide Insurance Co.*, 263 Pa.Super. 340, 397 A.2d 1238 (1979). Cf. *Schilling v. Pittsburgh Railways Co.*, 394 Pa. 126, 129, 145 A.2d 688, 690 (1958) (trial court ruling refusing to allow witness to estimate speed of trolley car was "eminently correct" where witness could not testify in terms of miles per hour, but, rather, could only say the speed was "unusual" or "excessive"). Another requirement for such lay opinion testimony, as with all lay testimony, is that it be based on the personal knowledge of the witness. See: *Lewis v. Mellor*, 259 Pa. Super. 509, 523, 393 A.2d 941, 949 (1978). See also: McCormick on Evidence, §§ 10 & 11 (3rd Ed.1984); *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.*, 344 Pa.Super. 218, 496 A.2d 762 (1985).

The opinion of Patricia Morgan that appellant was exceeding the speed limit prior to hitting the minor plaintiff was based on her belief that appellant was traveling at a higher rate of speed than she was. However, she also said that she had learned that the speed limit on Moosic Street was 25 miles per hour for the first time during trial. Upon receiving this information during trial, she used that figure as her point of reference in estimating appellant's speed, concluding that since she always travels at the speed limit she was also doing so at the time of the accident. Thus, the opinion of Patricia Morgan was based in large part, not on

her own personal knowledge and observation, but, rather on speculation regarding her own speed at the time of the accident. Moreover, she was unable to give a specific estimate of the speed at which appellant had been traveling. In our view, these deficiencies rendered the opinion given by Patricia Morgan too speculative. As such, the trial court should not have allowed the jury to hear and consider the witness's opinion regarding the speed at which appellant's vehicle was traveling. To do so was an abuse of discretion and, indeed, an error of law.

Having found that the trial court erred by allowing a fact witness to refer to a university study not directly relevant to any issue in dispute and by allowing a witness to give a speculative opinion concerning appellant's violation of the speed limit, we are constrained to reverse and remand for a new trial.[4]

The judgment of the trial court is reversed and the case is remanded for a new trial. Jurisdiction is not retained.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I join in the opinion of the majority, except for the analysis of the opinion testimony of Patricia Morgan, a lay witness.

Morgan testified that she habitually drives at the speed limit and, consequently, she assumed that she was driving at the speed limit of 25 miles per hour at the time of the accident. This testimony was sufficient to show Morgan's speed. A witness who habitually drives at the speed limit should be permitted to assume that she was driving at the speed limit at the time of the incident. "The probative

---

4. Appellant has also argued three errors in the trial court's charge to the jury. We have reviewed the jury charge in its entirety and find therein no additional grounds for granting relief. The specific allegations of error are adequately discussed and correctly decided in the opinion prepared by the trial court. Appellant's final challenge is to the award of delay damages to the plaintiffs. Because we have determined that a new trial is necessary, we decline to review this issue in the present appeal.

value of a person's habit or custom, as showing what was done on a particular occasion, is not open to doubt...." *Baldridge v. Matthews,* 378 Pa. 566, 106 A.2d 809 (1954). While driving at that speed, she observed DeHass' vehicle traveling in the opposite direction, before and at the moment of impact. It is reasonable that she could testify that he was driving faster than she was and therefore faster than the speed limit. Her opinion as to DeHass' relative speed was rationally based on her perception and clearly helpful to the determination of the facts in issue. *See generally, Lewis v. Mellor,* 259 Pa.Super. 509, 393 A.2d 941 (1978); Packel, *Pennsylvania Evidence* § 701 (1987).

Morgan's testimony was contradictory. She also testified that she was not sure if she had enough time to observe DeHass' vehicle before the accident and that she was slowed down because traffic in her direction was going slowly. These contradictions go to credibility, not admissibility. I would not find that the trial court's decision to admit Morgan's testimony was erroneous.

In holding that Morgan's testimony was speculative and inadmissible, the majority relies upon the general rule that, "while lay witnesses are permitted to express estimates of vehicle speed in numerical terms, terms such as 'fast,' 'slow' or 'excessive' and the like have been found to be conclusory in nature as well as lacking in evidentiary value." *Starner v. Wirth,* 440 Pa. 177, 181, 269 A.2d 674, 676 (1970). However this general proposition is not without exceptions. In support of this proposition, *Starner* cites *Holton v. Gibson,* 402 Pa. 37, 166 A.2d 4 (1960), which explains the rationale of the general proposition that has since been cited without reference to its exceptions, *e.g. Starner, supra; Catina v. Maree,* 498 Pa. 443, 447 A.2d 228 (1982). In *Holton,* the court distinguished between improper references by a witness to speed as 'fast' because of their conclusory nature, and proper references of relative speed. *Holton* held that when a witness observed an oncoming car traveling at one speed and then made another observation of the vehicle as it approached, the witness' testimony that the automobile

was traveling at an increased speed is testimony of a factual nature and admissible. I would find the rationale in *Holton* applicable. In Morgan's situation, her opinion was based on her observation of DeHaas' speed relative to her own, which observation was in turn based on her habit of traveling at the speed limit.

Moreover, if the use of the actual term, "fast" should not be permitted under these circumstances, it would be harmless error. Once the witness could testify that she was traveling at the speed limit and that DeHaas exceeded her speed, there is only one reasonable conclusion a jury could reach if it found her testimony credible.