## Tann v. GAF Corp.

*Joseph D. Shein,* for plaintiff.
*Robert B. Lawler,* for defendant.

KLEIN, R.B., *J.,* August 17, 1992—Plaintiff lost an asbestos case when the jury believed the defense expert who stated that Fee Otis Tann did not have any asbestos-related injury. Plaintiff's primary reasons for asking for a new trial is that the court precluded the introduction of a new expert pathologist long after the discovery deadline expired. Particularly in view of

the mass of asbestos cases and the need to process them in an orderly fashion, this was no abuse of the court's discretion. To ignore the rules of discovery and allow unlimited continuances and last-minute additions of expert witnesses would make a very difficult case management program impossible.

Fee Otis Tann worked for the Globe Rubber Company from 1935 to 1975. Although he did not have constant asbestos exposure, he did have exposure when he repaired machines and when he removed old asbestos insulation from pipes and boilers and then installed new asbestos products.

In 1979, his internist, Dr. Diana Hutchins, concluded that he had significant pleural and parenchymal changes from asbestos. In the summer of 1986, Fee Otis Tann died of a heart attack. Dr. Hutchins, in a report dated January 8, 1986, opined that respiratory problems from asbestos exposure contributed to his death. The defense expert, Dr. Theodore Rodman, concluded that while Mr. Tann had a number of pulmonary and cardiac problems, the cardiac problems led to his death and he had no pleural changes due to asbestos and no pulmonary asbestosis (asbestosis in the parenchyma or body of his lung). The jury agreed with Dr. Rodman and found for the defense.

The major complaint of the plaintiff in post-verdict motions is that the court refused to allow a new expert, a pathologist, to be introduced at the trial. The pathologist, according to his report, would have said that although there were no asbestos bodies in the tissue samples of the lung he reviewed, there was fibrosis that he attributes to asbestos exposure.

To understand the situation, it is necessary to consider the asbestos program as it was constituted in 1987. Under Supreme Court directive, mandatory non-jury

trials were held with appeals to a de novo trial before a jury. The purpose of the non-jury trial was to have a judicial evaluation of the case which hopefully would lead to a settlement. Therefore, discovery deadlines were set prior to the non-jury trial so that the judge would have all the information to properly evaluate the case. The schedule for both non-jury and any appeal was set a number of months in advance. Cases were grouped by plaintiff and defense firms to eliminate conflicts and expedite the trials.

Discovery deadlines were set prior to the non-jury trial, and videotaped depositions were prescheduled so that the trials could move smoothly thereafter.

The following is a partial chronology of the case:

| | |
|---|---|
| August 1979 | Complaint filed |
| May 15, 1985 | Defense expert report (Dr. Rodman) |
| Jan. 8, 1987 | Plaintiff's expert report (Dr. Hutchins) |
| March 19, 1987 | Defense expert report (Dr. Miller) |
| April 2, 1987 | Plaintiff's reports due |
| April 20, 1987 | Defense expert report (Dr. Helwig) |
| April 30, 1987 | Defense reports due |
| May 14, 1987 | Non-jury trial continuance denied |
| June 15, 1987 | Original jury trial date |
| June 16, 1987 | Plaintiff tenders expert report— first indication that expert is a pathologist |
| July 13, 1987 | Jury trial held |

At the non-jury trial, counsel for Tann asked to have the case taken off the jury list and continued for a

month. Of course, at that point the calendar was full a month ahead. Therefore, the court did offer plaintiff the option of deferring the case. Many cases were being deferred during the appellate court challenge to a number of asbestos procedures, including mandatory pre-recorded videotaped trials. Plaintiff did not avail himself of the option to defer.

Plaintiff's counsel also asked for additional time to submit a new expert report, complaining that defendant held the X-rays for a long period of time. Although apparently the pathologist (Dr. Bellin) had already been retained and in fact had written a report (not yet received by plaintiff), plaintiff made no mention of ever submitting a report from a pathologist. The court said that the original expert could write a supplemental report, but plaintiff could not retain a new expert at that late date.

When later in mid-June, plaintiff noticed a videotape deposition for Dr. Bellin, the court precluded his testimony. Never before had plaintiff offered testimony from a pathologist. Dr. Bellin was a pathologist who was "new" to the litigation, and it was customary to conduct a deposition regarding qualifications the first time a doctor testified. Likewise, if the plaintiff decided to use a pathologist, the defendants would want to obtain the slides, send them to a pathologist, get a report from the pathologist, and ultimately videotape his or her testimony. Obviously, this would result in a trial continuance for several months, and the necessity to find a slot to fit it in again.

The time to decide to use a pathologist is long before the discovery deadline expires, not after discovery has closed and the case is ready for trial. It is noted that the pathologist who examined Mr. Tann at Lankenau differed from Dr. Bellin and found that the death was

unconnected to pulmonary problems or asbestosis. Therefore, the defense would be confronted with an entirely new line of attack, the pathology reports, on the eve of trial. The defense would be prejudiced either by being forced to go to trial without a pathologist, or to face a continuance and have to again prepare the case months later.

It is true that the remedy of precluding an expert is a harsh one and only should be invoked if the lack of preparation of one side prejudices the other. However, in this case there is such prejudice.

It is noted that in this case, the theory that asbestos exposure caused Fee Otis Tann's death was presented by the plaintiff. It was presented by Dr. Hutchins, his treating physician. What was precluded was a new expert with a different specialty to support the viewpoint of Dr. Hutchins.

To manage an asbestos docket, it is necessary for the court to take control and keep the cases moving. Therefore, there would be prejudice to the court system, and consequently all of the litigants, if discovery deadlines meant nothing.

As this court said in denying the request for extensions at the non-jury trial (N.T. 5/14/87 at 9):

"You got the X-rays back on March 27. It's now May 15. You have had the X-rays for six weeks. You asked for 30 days' extension, which you got. You had them for six weeks.

"So if the discovery deadline is going to be anything, it seems you've had plenty of time in this case. Nothing happened lately. The guy died in 1986."

The court then allowed Dr. Hutchins to update her report but did not allow a new expert.

It is true that the preclusion of expert testimony is a drastic sanction which should only be applied when the facts of a case make it absolutely necessary to do so. *Kearns by Kearns v. DeHaas,* 377 Pa. Super. 200, 210, 546 A.2d 1226, 1231 (1988). However, late disclosure of the identity of an expert is to be condemned, and when the opposing side has been prejudiced by dilatory disclosure, preclusion can lie. *Id.*

Many of the cases reversing preclusion orders have resulted when the absence of expert testimony also precludes the plaintiff from putting on a case. *Steinfurth v. LaManna,* 404 Pa. Super. 384, 590 A.2d 1286 (1991). That did not happen in this case. Dr. Hutchins did testify to the same opinion that the proffered expert would have given. The only difference was that the new expert was in a different field and would have supported her.

As noted in *Gonzales v. Procaccio Bros. Trucking Co.,* 268 Pa. Super. 245, 252, 407 A.2d 1338, 1341 (1979) and quoted in *Pride Contracting Inc. v. Biehn Construction Inc.,* 381 Pa. Super. 155, 159, 553 A.2d 82, 84 (1989), *app. denied,* 523 Pa. 643, 565 A.2d 1167 (1989). "The court is required to strike a balance between the procedural need to move the case to a prompt disposition and the substantive rights of the parties."

That is what the court did in the instant case. There already was an expert to testify to causation. Allowing a new expert in a different field would have required a continuance, and would have diminished the value of discovery deadlines in this and other cases. Because of the flood of asbestos cases, it was critical to stick to deadlines and keep the cases moving.

Further, as noted in *Brunetti v. Southeastern Pennsylvania Transportation Authority,* 329 Pa. Super. 477,

481-82, 478 A.2d 889, 891 (1984), and *Pride,* the prejudice to the defendant is a factor to be considered. Here, the defendant would have to obtain a new expert and prepare the case again for a later trial. For these reasons, the order upholding the discovery deadline and precluding a last-minute expert was appropriate and necessary.

Plaintiff also argues that Dr. Rodman testified at variance from his report when he said that he found no asbestos disease at all. While the doctor had reviewed the hospital records just prior to trial, his testimony that there was no asbestos disease was consistent with his March 31, 1987 report, when Dr. Rodman said, "I do not believe any of these problems are in any way related to prior exposure to asbestos."

The March 31, 1987 report by Dr. Rodman included the following statement: "The changes on the left may be either extra pleural fat or parietal pleural thickening related to prior exposure to asbestos." Plaintiff points to this statement as an admission that pleural thickening may have been caused by asbestos exposure. Plaintiff further contends that Dr. Rodman testified beyond the scope of those earlier reports during a deposition taken on June 22, 1987. During that deposition, Dr. Rodman stated that there is no evidence of pleural thickening. Plaintiff claims that this is contrary to the previous reports. This is not so. In that report, Dr. Rodman went on to say that he could not distinguish between the two possible causes without further evidence, such as X-rays with oblique views. Just prior to the June 22 deposition, Dr. Rodman for the first time saw CAT scans, which provide a much more detailed view than X-rays. As a result, Dr. Rodman was able to eliminate the possibility of pleural thickening. This is not beyond the scope of Rodman's earlier report. Dr. Rodman

never confirmed asbestos-related pleural thickening, but just said he needed further evidence to make the definitive diagnosis. It was with the court's discretion to admit or refuse to admit this testimony. Since it did not contradict anything in earlier reports, and the negative CAT scans were available to plaintiff as well as defendant, it was appropriate to allow Dr. Rodman to make this addition to his report. This is a far cry from offering a brand new expert at the time of trial, particularly an expert that had never been deposed before in the litigation. In fact, the court allowed the plaintiff to have their existing expert update her report to expand upon her theory, but plaintiff chose not to do so.

Plaintiff raised other arguments in post-verdict motions, but several years passed and they were never briefed, so this court assumes they were abandoned. That is the position taken by defendants in their brief, and plaintiff made no response to this contention, and supplemented its brief by a later letter without raising these issues.

Therefore, post-verdict motions were properly denied.

### ORDER

And now, August 17, 1992, upon consideration of plaintiff's post-verdict motions and defendants' reply, it is hereby ordered and decreed that plaintiff's post-verdict motions are denied.