**Gettler v. Hofer**

*Chad E. Rankin,* for plaintiffs.
*Danette C. Dean,* for defendant.

CHARLES, *J.,* September 29, 2008—Before us is a motion entitled "plaintiffs' motion to preclude addi-

tional discovery." While cleverly couched, it is obvious to us that what plaintiffs truly seek is preclusion of testimony by defendant's expert witness. For reasons that follow, we do not believe that the circumstances of this case justify the "drastic" remedy of evidence preclusion. Thus, we will be denying plaintiffs' motion. However, because the conduct of defendant's expert will cause plaintiffs delay and inconvenience, we will be awarding plaintiffs relief that we find appropriate under the circumstances presented.

## I. FACTS

On June 13, 2008, we conducted a status conference in the above-referenced case. At that time, counsel for the parties advised us that discovery was nearly complete and that everyone wished to move the above-referenced matter forward toward a trial. As a result of our discussion with the parties, we entered an order establishing August 15, 2008 as a discovery deadline. Everyone's expectation was that the above-referenced matter could be tried before a jury during the November term of civil court.

By agreement of counsel, both parties agreed that the discovery deadline would not apply to videotape depositions used for trial.[1] Pursuant to this agreement, defendant scheduled the videotape deposition of Dr. Larry Rotenberg for August 19, 2008. On that date, both counsel arrived at Dr. Rotenberg's office expecting that Dr. Rotenberg's testimony would be preserved for trial.

---

1. This agreement was confirmed in writing by a letter mailed by plaintiffs' attorney dated June 25, 2008.

When defendant's counsel met with Dr. Rotenberg prior to commencement of the deposition, she learned for the first time that Dr. Rotenberg had procured psychological testing from two psychologists, Dr. Paul Delfin and Dr. Peter Thomas. Defense counsel notified plaintiffs' attorney about the situation and provided copies of reports authored by Dr. Delfin and Dr. Thomas. Plaintiffs' counsel was understandably upset given that he did not even know of the existence of Dr. Thomas and Dr. Delfin until the day of Dr. Rotenberg's deposition.

Ultimately, Dr. Rotenberg's deposition was canceled. When defendant's counsel sought to reschedule, plaintiffs responded with the motion now before us. Both sides have filed briefs in support of their respective positions. The question of whether we should permit Dr. Rotenberg to provide testimony based upon the reports of Dr. Thomas and Dr. Delfin is now before us for disposition.

## II. DISCUSSION

We confess that our sympathy and our "gut instinct" favor plaintiffs with respect to this dispute. This case was proceeding forward pursuant to our status conference order, and plaintiffs had every right to rely upon the premise that they would not be blindsided with new and previously undisclosed information. In candor, we take this opportunity to advise defendant that we were very tempted to grant plaintiffs' motion.

Unfortunately for plaintiffs, the law simply does not favor the relief they seek. With respect to discovery issues, evidence preclusion has been described by our

appellate courts as a "drastic remedy" that should be employed only sparingly. See *e.g., Kearns by Kearns v. DeHaas,* 377 Pa. Super. 200, 546 A.2d 1226 (1988). Our appellate cases consistently instruct us to eschew evidence preclusion as a remedy wherever it is possible under the equities of a given situation. See *e.g., Green Construction Co. v. PennDOT,* 164 Pa. Commw. 566, 643 A.2d 1129 (1994).

Pa.R.C.P. 4003.5 governs discovery of expert testimony. Sub-section (b) of the rule precludes a party from calling an undisclosed expert. However, sub-section (b) also states: "[I]f the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief."

Sub-section (b) of Rule 4003.5 was invoked by our Supreme Court in *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986). In *Feingold,* plaintiff's treating physician had been listed as a witness by plaintiff but not defendant. Plaintiff did not call the treating physician. During its case-in-chief, defendant sought to do so. The trial court ruled that defendant could not call plaintiff's physician because defendant did not list the physician as a witness in his pretrial statement. The Supreme Court reversed the trial court, holding that Pa.R.C.P. 4003.5 requires a trial court to "balance the facts and circumstances of each case to determine the prejudice to each party." *Id.* at 573, 517 A.2d at 1273. Among the factors to be used within the balancing test are the following:

(1) Whether the party seeking to call the witness engaged in bad faith;

(2) Did the party seeking to call the witness have the ability to discover the identity of the witness earlier;

(3) Whether the party seeking to call the witness proffered a legitimate excuse;

(4) Did the party seeking to call the witness "willfully" fail to comply with a court order;

(5) Did the party seeking to call the witness intend to mislead or confuse his adversary; and

(6) What is the importance of the proffered testimony. Summarizing all of these factors, the court stated:

"Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases of the court, and (4) bad faith [or] willfulness in failing to comply with the court's order." *Id.* at 574, 517 A.2d at 1274.

The principles enunciated in *Feingold* have been applied on numerous occasions by our appellate courts. For example, in *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa. Super. 17, 521 A.2d 451 (1987), the Superior Court reversed a trial judge's decision to bar defendant's expert from testifying because he was unidentified in interrogatories. The court emphasized that defendant's original expert became unavailable shortly before trial and the defendant acted promptly to procure another witness and notify plaintiff of what the new witness

would say. Similarly, in *Green Construction Co. v. PennDOT,* 164 Pa. Commw. 566, 643 A.2d 1129 (1994), the Commonwealth Court upheld a trial court's decision to permit a defense expert who was only disclosed five days prior to trial. The court stated:

"Assuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that it has been prejudiced from properly preparing its case for trial as a result of a dilatory disclosure. . . . Where there is ambiguity, Rule 4003.5 must be construed to secure a just determination of the action: this will more likely be achieved by receiving relevant evidence than by excluding it." *Id.* at 586, 643 A.2d at 1139. (citations omitted) Likewise, in *Aiello v. SEPTA,* 687 A.2d 399 (Pa. Commw. 1996), the court permitted an expert to testify whose identity had been disclosed 16 days prior to trial. In reaching this decision, the Commonwealth Court emphasized that the aggrieved party did not seek a continuance but chose to "gamble" by waiting for trial to force preclusion of testimony. The Commonwealth Court clearly determined that continuance in order to prepare would have been the appropriate remedy for the plaintiff's tardy disclosure of the expert.

In this case, we will employ the balancing test mandated by *Feingold* by discussing each of the factors highlighted by our Supreme Court. Those factors, and how they are implicated by this litigation, are as follows:

### (1) *Bad Faith on the Part of the Party Seeking To Call the Witness*

Defendant's counsel represented that she did not know about the existence of Dr. Delfin and Dr. Thomas prior to the date of Dr. Rotenberg's deposition on August 19, 2008. Rather than simply proceed ahead with Dr. Rotenberg's deposition, defense counsel immediately notified plaintiffs' attorney about Dr. Rotenberg's consultation with Dr. Delfin and Dr. Thomas. Defense counsel explained in her brief: "[Dr. Rotenberg's deposition] was ultimately canceled because defense counsel thought it would be fair to give plaintiffs' attorney the reports before the videotape deposition to avoid any surprise." (Defendant's brief at p. 1.) We accept defendant's attorney at her word. Therefore, we are unwilling to ascribe any bad faith to either defense counsel or her client.

### (2) *Ability of Party To Discover Witnesses Earlier*

Without question, defense counsel could have learned about Dr. Delfin and Dr. Thomas had Dr. Rotenberg called or written defense counsel prior to his testimony. However, we are well aware of the realities that accompany depositions of doctors. Routinely, medical witnesses will set aside a finite amount of time for a medical deposition. If an attorney is lucky, the doctor she or he seeks to call will offer 15 minutes of time prior to the deposition for preparation. It is almost unheard of for a doctor to agree to meet with an attorney for preparation days or weeks prior to the deposition. Given this reality of the medical-legal relationship, we are not surprised

that defense counsel only learned about Dr. Delfin and Dr. Thomas when she met with Dr. Rotenberg on the day of his deposition. We will not weigh this factor in favor of evidence preclusion.

### (3) *Validity of the Excuse Offered*

Defense counsel's only excuse for failing to more promptly notify plaintiffs is that she did not know about the existence of Dr. Delfin and Dr. Thomas. For reasons we have articulated above, we accept this excuse and will not weigh this factor in favor of evidence exclusion.

### (4) *Willfulness of a Party's Failure To Comply With a Court Order*

When defendant's attorney was made aware of the reports of Dr. Delfin and Dr. Thomas, she was faced with a choice. She could have proceeded with the deposition and carefully crafted questions to draw out Dr. Rotenberg's opinion without overtly disclosing his reliance upon Dr. Delfin and Dr. Thomas. Her second choice was to notify plaintiffs' attorney, knowing that an objection would probably ensue. Defendant's attorney chose the latter method. We believe that defense counsel's choice was in accordance with the Rules of Professional Conduct and displayed the sort of professional collegiality that we would like to see all lawyers employ. We certainly will not chastise defense counsel for the manner in which she proceeded after learning what her expert had done.

## (5) *Intent to Mislead or Confuse the Adversary*

See comments articulated in preceding paragraph. We will not weigh this factor in favor of evidence preclusion.

## (6) *The Importance of the Proffered Testimony*

In this case, plaintiff Melanie Gettler seeks damages based upon "neurological injuries", "post-traumatic stress disorder", "depression", "anxiety", "psychological injuries and sequalea", "emotional injuries and sequalea" and "aggravation of pre-existing emotional and psychological conditions" (¶11 of complaint.) Dr. Rotenberg is the primary defense witness with respect to the neurological, psychological and emotional condition of Melanie Gettler. As such, we view Dr. Rotenberg as a critical defense witness. Precluding or limiting Dr. Rotenberg's testimony would have a profound impact on defendant's ability to defend this litigation. Therefore, we weigh this factor *against* evidence preclusion.

## (7) *Prejudice and the Ability To Cure It*

In terms of the ultimate trial of this case, we perceive no undue prejudice that would flow to plaintiffs by permitting everyone to take a step back in order to properly analyze all aspects of Dr. Rotenberg's current proffered testimony. If it has not already been accomplished, all documentation and reports generated by Dr. Delfin and Dr. Thomas should be turned over to plaintiffs. Plaintiffs will then have the opportunity to digest that information and conduct inquiry with respect thereto. If necessary,

we would permit plaintiffs to hire another expert to rebut what Dr. Delfin and Dr. Thomas say. After all of the above is accomplished, Dr. Rotenberg can be deposed once more and plaintiffs' counsel will be prepared to fully cross-examine Dr. Rotenberg on all aspects of his opinion.

As we perceive it, the primary prejudice to plaintiffs involves cost and delay. We can and will craft remedies that fall short of the drastic remedy of evidence preclusion. We will not weigh this factor in favor of evidence preclusion.

### (8) *The Extent To Which Waiver of the Rule Would Disrupt Trial of the Case*

The net effect of this situation will be to delay trial. Without question, this will be an inconvenience to both plaintiffs and to the court. However, we recognize that a trial is largely a quest for the truth. That quest should not be jeopardized based upon minimal inconvenience. By the order we will enter today, trial will be postponed and people will be inconvenienced. However, the greater purpose of facilitating a fair and full trial inquiry will be preserved.

### III. CONCLUSION

Based upon the above, we will deny plaintiffs' request to preclude and/or limit Dr. Rotenberg's testimony. However, under the authority granted in Pa.R.C.P. 4003.5 and given the events as described to us, we will enter an order to appropriately respond to what has occurred. That order will include the following:

(1) Trial will be continued. We will grant either party leave to list this matter for trial no earlier than March of 2009.

(2) We will reopen discovery on a limited basis. We will direct that defendant provide to plaintiffs all information in her possession regarding Dr. Rotenberg, Dr. Delfin, and Dr. Thomas. Thereafter, we will afford plaintiffs with the following opportunities:

(a) We will afford plaintiffs with the opportunity to depose Dr. Delfin and Dr. Thomas. All compensation of Dr. Delfin and Dr. Thomas, and all expenses pertaining to said depositions will be paid by defendant.

(b) We will afford plaintiffs with the opportunity to procure an expert witness to respond to Dr. Rotenberg, Dr. Delfin and/or Dr. Thomas. Plaintiffs will be required to provide defendant with any reports relative to any newly hired experts no later than January 15, 2009.

(3) We will require that defendant reimburse plaintiffs' counsel for out-of-pocket expenses pertaining to the aborted deposition of Dr. Rotenberg. A bill of out-of-pocket expenses incurred by plaintiffs' counsel is to be submitted to defendant's counsel for payment within 30 days. This invoice shall not include attorney's fees.

## ORDER

And now, September 29, 2008, after review of the file and after consideration of the briefs submitted by the parties, the order of this court is as follows:

(1) Plaintiffs' motion to preclude or limit testimony of Dr. Larry Rotenberg is denied.

(2) Trial in this matter shall be continued. Either party is at liberty to list this matter for trial no earlier than March of 2009.

(3) Discovery is reopened on a limited basis. Defendant is directed to provide plaintiffs all information in her possession regarding Dr. Rotenberg, Dr. Delfin and Dr. Thomas. Thereafter, plaintiffs shall be afforded with the following opportunities:

(a) The opportunity to depose Dr. Delfin and Dr. Thomas. All compensation of Dr. Delfin and Dr. Thomas, and all expenses pertaining to said depositions will be paid by defendant.

(b) The opportunity to procure an expert witness to respond to Dr. Rotenberg, Dr. Delfin and/or Dr. Thomas. Plaintiffs shall be required to provide defendant with any reports relative to any newly hired experts no later than January 15, 2009.

(4) Defendant shall reimburse plaintiffs' counsel for out-of-pocket expenses pertaining to the aborted deposition of Dr. Rotenberg. A bill of out-of-pocket expenses incurred by plaintiffs' counsel shall be submitted to defendant's counsel for payment within 30 days. Said invoice shall not include attorney's fees.