534 A.2d 778

**COMMONWEALTH of Pennsylvania**

v.

**Theodore McNEELY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 15, 1987.

Filed Oct. 28, 1987.

Reargument Denied Jan. 5, 1988.

518

---

Douglas M. Johnson, Assistant Public Defender, Collegeville, for appellant.

Mary M. Killinger, Assistant District Attorney, Norristown, for Com., appellee.

Before DEL SOLE, MONTEMURO and HESTER, JJ.

DEL SOLE, Judge:

The instant appeal follows the judgment of sentence in which Appellant received six to fifteen years imprisonment for Rape, Involuntary Deviate Sexual Intercourse, Incest, Statutory Rape and related offenses.

Appellant requests this court to grant him appellate relief in the form of a new trial. Appellant attempts to substantiate this claim by advancing three counts of error allegedly committed by the trial court. They are:

1.  the trial court erred in allowing a clinical social worker to testify as an expert witness as to factors in assessing the credibility of victims, and in regard to the effects of intrafamilial sexual relations on victims;

2.  the trial court erred in denying defense counsel the opportunity to question a Children and Youth Service worker concerning the identity of the person who reported the abuse; and,

3.  the trial court erred in denying Appellant's motion for a mistrial when a witness made reference to Appellant's prior incarceration.

Initially, Appellant challenges the expert testimony of Maddi–Jane Sobel which concerned the dynamics of intrafamily sexual abuse and behavorial patterns of the victims.[1] Ms. Sobel was a clinical social worker who specialized in the area of incest and sexual abuse. Appellant does not dispute the competency of this witness to testify on this subject matter. Instead, it is Appellant's position that Ms. Sobel's testimony, as presented at trial, encroached upon the province of the jury.

We begin with our appellate scope of review. It is axiomatic that the admission or exclusion of expert testimo-

---

1.  The dissent would hold that Appellant has waived this first issue insofar as it was not raised with the specificity required in Pa.R. Crim.P. 1123(a). In his Motion for New Trial and in Arrest of Judgment, Appellant alleges that "[t]he trial judge failed to sustain the defendant's objection to all the testimony of the Commonwealth's witness, Matti Jane Sobel (sic)". Unlike the dissent, we find that this statement sufficiently apprised the trial court of the nature of Appellant's complaint with respect to Ms. Sobel's testimony.

ny lies within the sound discretion of the trial court. Such testimony is admissible when it involves explanations and inferences not within the ordinary knowledge, intelligence and experience of the jury. A trial judge's decision to allow expert testimony will not be reversed absent a clear abuse of discretion. *Commonwealth v. Gallagher,* 353 Pa.Super. 426, 510 A.2d 735, 739 (1986).

After entertaining arguments by the attorneys for Appellant and the Commonwealth, the trial court permitted Ms. Sobel to testify. This decision was grounded on the trial judge's interpretation of *Commonwealth v. Baldwin,* 348 Pa.Super. 368, 502 A.2d 253 (1985), which addresses the admissibility of expert testimony on the dynamics of child sexual abuse and behavioral patterns of its victims. In *Baldwin,* we determined that such testimony, *when relevant,* is admissible so long as the expert does not render an opinion on the accuracy of the victim's recitation of facts. *Id.,* 348 Pa.Superior Ct. at 376–377, 502 A.2d at 257.

Expert testimony is relevant if it tends to make a fact at issue more or less probable and does not confuse, mislead, or prejudice the jury. *Gallagher, supra,* at 510 A.2d 739. Relevance is comprised of two fundamental components: materiality and probative value. "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." Probative value, on the other hand, deals with the tendancy of the evidence to establish the proposition that it is offered to prove. McCormick, *Evidence,* § 185, at 541 (Cleary 3rd ed. 1984).

The record indicates that the trial court afforded *Baldwin* an overly broad reading in applying its holding to the case at bar. In overruling defense counsel's objection to Ms. Sobel's testimony, the trial court held that such testimony was sanctioned under *Baldwin* simply because of its general informational value. (N.T., 4/22/86, 130–131).

*See also:* Trial Court Opinion, 11/17/86, 4–5. Contrary to the trial court's view, *Baldwin* does not provide carte blanche admissibility of expert testimony of this nature in every child sexual abuse case. Rather, before testimony is admitted on the psychological dynamics of child sexual abuse and the associated behavioral patterns of the victims, the trial judge, in every case, must determine whether it is relevant to the facts in issue.

In *Baldwin,* the proferred testimony by the social worker was found to be relevant to a material fact at issue since the jury could infer that certain gaps and inconsistencies in the victim's testimony stemmed from the psychological dynamics of incest rather than from fabrication or fantasy. *Baldwin,* at 502 A.2d at 256. Likewise, in discussing the prejudicial impact of this testimony, we examined cases from our sister states that addressed similar issues. In *State v. Conlogue,* 474 A.2d 167 (Me.1984), expert testimony on the "battered child syndrome" and associated patterns of intra-family child abuse was found to be admissible to impeach the credibility of a mother's retraction of her confession that she had abused her child. Similarly, in *State v. Kelly,* 97 N.J. 178, 478 A.2d 364 (1984), expert testimony on the "battered woman syndrome" was adjudged admissible where the issue was whether the defendant wife could establish a claim of self-defense for killing her husband. In this Commonwealth, we found in *Gallagher, supra,* that a physician's testimony on "rape trauma syndrome" was relevant in explaining why the complainant was able to identify the appellant four years after her assault, although she had been unable to do so only two weeks after the attack. In that case, the central issue at trial was whether or not the complainant had incorrectly identified the appellant as her attacker. *Id.* at 510 A.2d at 738.

Most recently, in *Commonwealth v. Rodgers,* 364 Pa.Super 477, 528 A.2d 610 (1987), we held that in appropriate factual circumstances, testimony concerning the battered

child syndrome is admissible when given by a properly qualified expert witness. *Id.* at 528 A.2d at 614. A diagnosis of battered child syndrome is hallmarked by a "finding of multiple injuries in various stages of healing, primarily multiple fractures, soft tissue swelling or skin bruising". In addition, the young child is generally malnourished, with poor hygiene, and the severity and type of injury is inconsistent with the causes concerning the injury offered by parents or others who were caring for the child. *Id.* at 528 A.2d at 614.[2]

We find it necessary to distinguish *Rodgers* from the case *sub judice.* In *Rodgers,* the proffered testimony concerned the physical manifestations of the battered child, including the nature and extent of injuries as observed and classified. Such testimony was offered to challenge the appellant's "claim that the child 'bruised easily', 'would throw a fit', and that some of the bruises were caused by the administration of cardiopulmonary resuscitation on the child." *Id.* at 528 A.2d at 615. By comparison, Ms. Sobel's testimony addressed in a general manner the psychological dynamics of child sexual abuse, including the behavorial patterns of its victims and the parental couple interaction of families affected by incest. Unlike the expert in *Rodgers,* the witness' observations did not concern the physical manifestations of the trauma experienced by the victim. Nor was it utilized to bolster the Commonwealth's position with respect to any specific issue at trial. Based on these distinctions between the cases, we find that the decision we reach today places no restrictions on our holding in *Rodgers.*

The aforementioned cases are consistent on one point: the expert testimony sought to be introduced was found to

---

2. We note that there is a major distinction between the "battered child syndrome" and the "behavorial patterns of child sexual abuse victims". Testimony relating to the "battered child syndrome" concerns the *physical manifestations* of the abuse. By comparison, testimony with respect to the "behavorial patterns of child sexual abuse victims" deals with the *psychological dynamics* of child sexual abuse and the behavorial traits of its victims.

have a direct bearing on a specific issue in each particular case.

In the instant case, it cannot be said that the relevance of Ms. Sobel's statements was established either before or during her testimony. When offered as an expert witness, the prosecutor did not demonstrate how Ms. Sobel's testimony was relevant to a central issue at trial.[3] At most, the trial judge speculated that the prosecutor desired to use the witness' statements to show the child sexual abuse victims often have difficulty remembering dates and times. (N.T., 4/22/86, 131). During the course of her testimony, the witness was permitted to deliver a virtually uninterrupted dissertation on the general characteristics exhibited by incest offenders and their victims. The testimony spanned topics including the specific behavior demonstrated by incest victims, the parental couple interaction of families affected by incest, the precipitating events leading to the disclosure of the abuse, and the conditioning continuum which influences the victim's ability to recall specific occurrences of incestuous activity. (N.T., 4/22/86, 137–145). However, Ms. Sobel was never questioned to testify concerning any specific issue at trial. From our review of the record, it is apparent that, at the close of Ms. Sobel's testimony, the jury was left without any indication of how the testimony could aid in its deliberation on any central issues at trial.

This particular use of expert testimony concerning intrafamily sexual abuse was not envisioned by our holding in *Baldwin*. It is beyond cavil to suggest that testimony of this nature is automatically relevant, and therefore admissible, in every child sexual abuse case. Rather, we emphasize that expert testimony discussing the general dynamics of child sexual abuse must be offered to further its propo-

3. By its appellate brief, the Commonwealth now argues that "Ms. Sobel's testimony was proper and served to aid the finder of fact with understanding sexual abuse." (Appellee's Brief, 5). However, the record does not support the contention that the jury's understanding of sexual abuse was a central issue at trial. Thus, the purely informational value of the witness' testimony cannot alone establish its relevance.

nent's position on a specific issue at trial. The admission of such testimony in a vacuum, without relation to a particular factual dispute, is inappropriate. For this reason, we find it necessary to remand the instant case for a new trial.[4]

Case remanded for proceedings consistent with this opinion.

MONTEMURO, J., files a dissenting opinion.

MONTEMURO, Judge, dissenting:

I dissent from the majority's conclusion that a new trial is warranted in this case.

First, I find appellant's claim concerning the admissibility of the Commonwealth's expert to have been waived. Appellant's post trial motion, in raising this issue, states only that "the trial judge failed to sustain the defendant's objection to all the testimony of the Commonwealth's witness Maddie–Jane Sobel." Pa.R.Crim.P. 1123(a) reads in pertinent part that "only those issues raised and the grounds relied upon in the motions *that are stated specifically and with particularity* may be argued or heard." (Emphasis added.) The required specificity is notably absent from appellant's claim, thus removing it from our consideration. "[I]t is no longer merely a warning, but the law, that all issues not specifically raised in post-verdict motions are waived on appeal." *Commonwealth v. Little*, 354 Pa.Super. 546, 512 A.2d 674, 678 (1986)(citations omitted).

Next, the majority has relied upon the relevance, or its absence, of the proposed testimony as justification for reversal. At no time has appellant advanced this theory, arguing rather that the testimony preempts the jury's function as the assessor of a witness' credibility.

Accordingly, I would affirm.

4. Because of the decision we reach today on Appellant's first issue, we need not address the remaining two arguments.