553 A.2d 74

**COMMONWEALTH of Pennsylvania**

v.

**Robert EMGE, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued June 29, 1988.

Filed Dec. 8, 1988.

Reargument Denied Feb. 17, 1989.

140

Stanton D. Levenson, Pittsburgh, for appellant.

Debra B. Barnisin, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before BROSKY, JOHNSON and MELINSON, JJ.

JOHNSON, Judge:

On this appeal, Robert Emge, Sr., stands convicted of sexual misconduct with his six-year-old son.

He was convicted by a jury of Involuntary Deviate Sexual Intercourse, Indecent Assault and Corruption of Minors.

Appellant raises the following issues for our consideration: (1) whether the trial court erred in permitting the Commonwealth's psychologist to express opinions bearing directly upon the veracity of the alleged child victim; (2) whether the trial court erred in permitting testimony by the Commonwealth's psychologist where it did not relate to any specific issue at trial; (3) whether the trial court erred in refusing to allow appellant to call his divorce attorney as a witness; and (4) whether the trial court erred in refusing appellant's motion for a mistrial following testimony that appellant's wife "feared for her life".

The last two issues raised by appellant were properly discussed and disposed of by the trial court. Opinion,

December 2, 1987. Thus, it is only appellant's first two assignments of error which warrant discussion.

The main issue in the case was the credibility of the father versus the credibility of the son. Because we conclude that the testimony of the clinical psychologist was an intrusion upon the function of the jury, we reverse the conviction and grant a new trial.

■ The admission of expert testimony lies within the sound discretion of the trial court. It normally would involve explanations and inferences not within the ordinary knowledge, intelligence and experience of the jury. A trial judge's decision to allow expert testimony may not be reversed absent a clear abuse of discretion. *Commonwealth v. McNeely*, 368 Pa.Super. 517, 520, 534 A.2d 778, 779 (1987).

■ Defense counsel had appeared before the trial court, prior to the selection of the jury, to present a motion *in limine* with respect to the possible testimony of Anthony P. Mannarino, a clinical child psychologist employed at Western Psychiatric Institute and Clinic. R.R. 7a, 25a–28a. The matter was reviewed the afternoon of June 10, 1986, R.R. 193a–202a, and prior to resumption of trial the morning of June 11, 1986, R.R. 210a–214a. The Commonwealth offered that Dr. Mannarino would testify on the following subjects:

THE COURT: We were to discuss the matter, contemplation, of the Commonwealth in calling some expert witness.

MR. KRASTEK [Asst. D.A.]: Yes, Your Honor. The expert in question would be Dr. Anthony Mannarino, Western Psychiatric Institute and Clinic and the University of Pittsburgh.

As a clinical psychologist, he examined this boy at the request of Judge Kaplan. In fact, we offer that the reason we would call him to testify is to note, number one, behavioral observations of the boy, you know, that he was able to respond to questions, that he was cooperative, that he had enough of an attention span to be able to

go through that interview process, to describe his manner of when he was comfortable, when he was uncomfortable in the interview process itself.

He would testify in terms as an expert with regard to this victim's cognitive ability, his ability to articulate things, understand things and express, articulate things.

He would also testify, again, generally speaking, with regard to the dynamics of child sexual abuse in terms of consistent patterns of behavior with regard to how children react afterwards in terms of being able to remember dates, being able to express what happened to them, the emotion they have as a result, their behavior afterwards in terms of being withdrawn or how they react in school, how they react at home, how they react when the perpetrator is around, where their discipline is reduced as a result, those kind of things, generally speaking; and, then, to compare what we have on the record already in terms of what happened to Bobby afterwards: His change in behavior and how that either is consistent or not consistent with, generally speaking, a victim of child sexual abuse.

Also, he will testify in terms of the dynamics about how a child of such tender years would be able to know something so explicitly sexual, in terms of how he would be able to describe something like that; and whether he might have to observe something like that or have it happen to him. In terms of, again, being able to articulate a very explicit sexual act that occurred to him and how a child of such young years would know that. I am also thinking that Dr. Mannarino might be offered with respect to the statements that he gave to—statements Bobby Emge gave to Dr. Mannarino.

Now, on my first walk in here today, I had no intention of doing that. To me, that is rank hearsay and with no exceptions; however, now, again some of the other matters having been brought up about other matters that Bobby mentioned and that came through the mother over my objection on cross-examination, I would now offer, by

way of prior cognizance statements, those same things that Bobby Emge told the clinical psychologist about other matters and the matters that his father did to him. That would be the offer of proof, Your Honor.

R.R. 193a–195a.

Following the offer of proof, trial defense counsel correctly pointed out that the trial court had already ruled upon the child's ability to respond to questions, the child's cognitive ability, his ability to understand things and to articulate things. Following a lengthy examination, the trial judge had found the witness competent to testify. R.R. 37a–53a. Thus, any testimony offered by Dr. Mannarino intended to bolster the child's ability to respond to questions and his ability to understand or articulate matters would relate to an issue already decided by the court, *outside the presence of the jury.* R.R. 53a. Since the child's competency had already been determined by the court, any testimony in this area would be immaterial.

In the same vein, the dynamics of child sexual abuse in terms of consistent patterns of behavior by children generally was never an issue in this case. Whether the changes in the child's behavior in this case were "consistent with, generally speaking, a victim of child sexual abuse" would have little probative value, on the issue of whether Robert Emge, Sr. did, in fact, commit the specific offenses for which he was charged. The probative value of such testimony is outweighed by the prejudicial impact of admitting such testimony.

Even if it were assumed that the testimony of Dr. Mannarino could properly withstand a challenge, based upon the offer of proof, an examination of the expert's actual testimony establishes that a new trial must be granted.

The trial court permitted Dr. Mannarino to testify, over objection, that the alleged victim's ability to differentiate reality from fantasy was excellent for his age. R.R. 220a. This is nothing more than an expert's opinion as to competency, a strictly judicial function in the first instance. After testifying regarding the dynamics of child sexual abuse and

consistencies in behavioral pattern and behavioral changes in children involved in sexual abuse, Dr. Mannarino was permitted to testify that the emotional difficulties which the alleged victim experienced "are consistent with kids who have been sexually abused." R.R. 221a. He further testified to "a fear of retaliation from the alleged perpetrator" which he observed in the child in this case, finding that such fear was "consistent with children who have been sexually abused." *Id.*

The fact that Dr. Mannarino spent only seventy-five minutes interviewing the child almost eight months after the alleged incident occurred, R.R. 223a, is not controlling. If we ask what proposition Dr. Mannarino's testimony was offered to prove, the answer can only be that the characteristics exhibited by the child in this case were "consistent" with characteristics displayed by children understood to be child abuse victims previously examined or studied by the expert. This proposition was not, and should not be, an issue in the case.

Although we cannot question Dr. Mannarino's qualifications as an expert, since this was by stipulation, R.R. 215a, our review of the expert's testimony leads us to conclude that the facts upon which his conclusion was based, were at best sketchy. As Justice Zappala observed in *Commonwealth v. Rounds*, 518 Pa. 204, 207, 542 A.2d 997, 999 (1988), at the heart of any analysis is the veracity of the facts upon which the conclusion is based. Without the facts, a jury cannot make any determination as to validity of the expert's opinion. In this case, we do not find the development of sufficient facts, either on direct or cross-examination, to permit the jury to utilize Dr. Mannarino's conclusions in making their ultimate determination.

Returning to the testimony itself, we must conclude that testimony which matches up the behavior of known victims of child sexual abuse with that of an alleged victim can serve no purpose other than to bolster the credibility of the alleged victim, and this purpose is patently prohibited. *Commonwealth v. Rounds*, 518 Pa. at 207 n. 4, 542 A.2d at

999 n. 4; *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986). We find no distinction between expert testimony as to what a sex abuse victim might *say* and testimony from an expert as to how an abuse victim might *behave.* Conduct is a form of communication, indeed a form of speech, and a defendant would find little solace in the knowledge that the conviction resulted from the jury's belief that the accuser *acted* in a way that child sexual abuse victims are believed to act, as a class.

While both *Davis, supra* and *Seese, supra,* dealt with express testimony regarding the alleged victim's ability to *verbally* communicate the truth, we conclude that *behavioral testimony* equally invades the exclusive province of the fact finder. Here, the jury had the benefit of the child accuser's testimony, as well as that of other witnesses for the prosecution. Our faith lies in the jurors' ability to rely on the ordinary experience of life, their common knowledge of the natural tendencies of human nature—including those of a child—and their observations of the character and demeanor of the opposing witnesses.

We are not convinced that a child clinical psychologist is in a better position to make a judgment on the reliability of a child's testimony than a jury of twelve. Nor is there any evidence on this record that the jury could not have reached a proper verdict but for the testimony of an expert on the general dynamics of child sexual abuse.

Here, the jury received testimony which, in effect, told them that the behavior of the alleged victim was precisely like the behavior of a victim of child sexual abuse. The jury was also informed, by the expert, that the child accuser possessed an excellent ability, for his age, to differentiate reality from fantasy. The only possible outcome of such expert testimony, if believed, is to conclude that the child witness is very reliable and should be believed. This is wrong.

Recently, in an analogous situation, our supreme court reversed an order of this court approving the introduction

of expert testimony regarding the victim's affliction with rape trauma syndrome. *Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988). Speaking for a divided court, Mr. Justice Flaherty held that the testimony of an admitted expert in the field was an impermissible encroachment on the jury's function of determining credibility. The court found that the only purpose of the expert testimony, which reviewed the unusual behavior of the victim post-attack, was to enhance the credibility of the victim. There, as here, the expert testimony involved the conduct, or behavior, of an alleged victim in comparison to the conduct of members of a known class of victims. There, as here, the testimony would invest the opinions of experts with an unwarranted appearance of authority on the subject of credibility, which is within the facility of the ordinary juror to assess. *Id.,* 519 Pa. at 297, 547 A.2d at 358–359.

We retain an abounding faith in the ability of jurors to deal with these admittedly difficult and serious cases. We also steadfastly believe in the continued confidence and high regard in which we hold our jury system. We need not decide, in this case, that all expert psychological testimony comparing the general behavioral patterns of sexually abused children to a specifically, allegedly abused child is inadmissable. On the facts here presented, however, we believe that the expert testimony proffered was clearly damaging to the defendant's right to a fair trial. We, therefore, reverse the judgment of sentence and award a new trial.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent. Appellant contends, and the majority agrees, that the testimony of the Commonwealth's expert went too far in that it expressed an opinion bearing directly upon the alleged victim's veracity.

It is true that previous case law has held that testimony bolstering or commenting upon the child victim's credibility is inadmissible. *Commonwealth v. Rounds,* 518 Pa. 204,

542 A.2d 997 (1988), *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986); *Commonwealth v. Pearsall,* 368 Pa. Super. 327, 534 A.2d 106 (1987). However, the court has permitted expert testimony regarding the general behavioral and psychological characteristics of child sexual abuse victims. *Commonwealth v. Pearsall, supra.*

In the *Pearsall* case, our Court stated:

... the record sustains the trial court's ruling that the Commonwealth's expert was qualified to express opinions regarding the child victim's mental and verbal capacity as determined by standard and accepted tests and the effect of such capacity on a child's ability to generate fantasies.*

* The expert testified that the child victim "is a very concrete thinking girl, and her ability to fantasize at an abstract level is quite limited." (N.T. 3/6/86 at 19). On cross-examination, the expert explained, "her intellectual level is so limited, she would have a very difficult time describing the events that she described without having had the experience." (N.T. 3/6/86 at 35).

*Id.,* 368 Pa.Superior Ct. at 332–333, 534 A.2d at 109.

Likewise, instantly, in language almost identical to that permitted in *Pearsall,* the expert testified that "Bobby's ability to differentiate reality from fantasy is excellent for his age based on the testing and on the interview." (Notes of Testimony, p. 209). Appellant equates this to a direct commentary on the child's credibility. However, the expert merely commented upon the child's general cognitive abilities. No opinion was expressed regarding the child's veracity, nor was the issue removed from the jury. It must be remembered that even a child who is not fantasizing may not be telling the truth. Thus, credibility and veracity determinations remained with the jury.

The expert's testimony here falls far short of the forbidden testimony in *Commonwealth v. Seese,* supra. In *Seese,* the expert testified as follows:

It is very unusual that a child would lie about sexual abuse.... [P]repubertal children usually do not lie about matters of sexual abuse no matter how chaotic or uncomfortable their home situation is, one, because they don't

know how to lie about it. They don't know what to say. It's not part of the life experience, so everything they say is something they have seen or experienced. It would be very unusual for them to lie.

Supra, 512 Pa. at 441–42, 517 A.2d at 921.

Nor does it approximate the testimony held to be inadmissible in *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988), where the expert testified that "children who have not been involved in sexual experiences typically do not fantasize about sexual experiences." On cross examination, he said, "My experience with children who have had some type of sexual experiences when they report about it, typically it is based upon some event that actually occurred and not some fantasized or fabricated experience." 518 Pa. at 80, 541 A.2d at 316.

Appellant claims that the expert's comments regarding the child's ability to distinguish between fantasy and reality, along with his testimony "that [the child] was the victim of sexual abuse ..." equalled the testimony in the *Seese* case; however, it must be noted that the expert here took every precaution to refer only to the "alleged child abuse" (Notes of testimony, 203–214). Nowhere was it affirmatively stated that the child was definitely a victim of child abuse.

The majority cites the recent case of *Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355 (1988), in support of its position. However, *Gallagher* involved expert testimony on the Rape Trauma Syndrome, from which the victim was diagnosed as suffering, and its effect upon the identification process. There, the victim was unable to identify the appellant within weeks of the crime but did identify him four years later. The Pennsylvania Supreme Court disallowed such testimony in that case, as encroaching upon the province of the jury. The *Gallagher* testimony is much more similar to that of *Davis* or *Seese* than it is to *Pearsall* or the case sub judice. The *Gallagher* testimony was a corroboration of the victim's immediate failure to identify the appellant and her recall four years later, rather than a

commentary on her cognitive abilities, as was the case instantly.

I am in full agreement with the majority wherein they state:

We retain an abounding faith in the ability of jurors to deal with these admittedly difficult and serious cases. We also steadfastly believe in the continued confidence and high regard in which we hold our jury system.

Majority Op. at 146. I would, however, carry this "abounding faith" one step further, as I believe that jurors have the ability to decide whether a child is *actually* telling the truth, once they are told that the child knows the difference between truth and falsity.

Believing, as I do, that the expert testimony did not strain the bounds of propriety, I do not feel that the expert's testimony prejudiced appellant's right to a fair trial. Finding no clear abuse of discretion on the part of the trial court, I would affirm the judgment of sentence.